Your Honor, the second case on document 2-16-05-21, Chief of the State of Florida, Plaintiff Abilene v. Michael Delaney, Defendant Pellant. Arguing on behalf of the Defendant Pellant, Ms. Jennifer L. Henson. Arguing on behalf of Plaintiff Abilene, Ms. Lisa Ann Hoffman. Both sides ready to proceed? Yes. You may proceed when you're ready. Good morning, Your Honors, and may it please the Court. My name is Jennifer Henson. I represent Michael Delaney, who is the appellant in this case. Mr. Delaney is convicted of the first-degree murder of Michael Scalzo, John Scalzo, forgive me, which occurred on June 19th of 2009. Today he is appealing the first-stage dismissal of his post-conviction petition. Which was dismissed in the DuPage County Circuit Court. On appeal, he is raising two claims of ineffective assistance of trial counsel. First, he's raising the claim that his trial counsel was ineffective for failing to present evidence that Mr. Delaney suffered from PTSD, and that PTSD influenced his actions on the day of this offense. And secondly, he is raising a claim that his trial counsel was ineffective for failing to investigate and present a defense of involuntary intoxication. The trial court can certainly rely on the trial court record, its knowledge of the record, the things that happened before, correct? In the case? Well, the trial court can certainly rely on the record itself. Right. Yes. And part of the record in this case was this crankle hearing that we set it back for, and there was a fairly extensive crankle hearing on this issue of PTSD, was there not? There was some information brought out at the crankle hearing on this issue of PTSD. However, as we've argued in the briefs extensively, there were a number of materials that were pertinent to Mr. Delaney's claim that his PTSD should have been brought into evidence at trial, that we just did not have access to, or that we did not have in our hands at the time of the crankle hearing. So at the time of the crankle hearing, for example, the trial court did not have before it a written evaluation of Delaney performed by a board-certified neurologist, Thomas Bristow. The trial court did not have before it an evaluation of Delaney performed by Dr. Kip Hillman, who was a diplomat in forensic psychology with the American Board of Professional Psychologists. In addition, the trial court did not have before it at the time of the crankle hearing treatment records from a mental health care provider in Oak Park River Forest. But it's clear that the defense attorney had all those documents, correct? These are the documents that were discussed early on in the case where Mr. Delaney himself agreed not to present this information. Trial counsel had those records in his possession, yes. And there was some discussion of the issue of PTSD on the record. As we have argued in our brief, first of all, trial counsel was mistaken about what he could present, what he could and could not present in front of the jury about PTSD. The trial court had barred the defense in a pre-trial motion in Lemonade from presenting an expert opinion on the ultimate issue of whether Mr. Delaney would have committed this offense had he not suffered from PTSD. Or rather, had he not suffered from PTSD, he would not have committed this offense. The trial court barred that and only that. However, defense counsel at the trial level was mistaken about what the trial court was barring, and he felt that the trial court was barring any evidence that PTSD had any influence on Mr. Delaney's actions. And that's a bit of confusion that the trial court cleared up at the crime proceeding. But trial counsel made this decision to forego the PTSD evidence under a mistaken idea about what the trial court had barred him from presenting. Separate from that mistake, I mean, there was a crank of hearing brought out that the state was prepared to present expert testimony that the defendant was malingering symptoms of PTSD, correct? Trial counsel did mention that at the crank of hearing, at the crank of inquiry. And trial counsel did not want the case to turn to bailing the experts on this really almost side issue that really would take away from the ultimate self-defense issue. Trial counsel did state that at the crank of inquiry. Mr. Delaney's position on that is that it's not reasonable to think that he would have been seen as malingering. Mr. Delaney could go back as far as two years before this incident happened, 2007, and show that he was diagnosed with PTSD and that between 2007 and June of 2009, when the incident occurred, he had been treated for PTSD, diagnosed by more than one provider, and prescribed medications to treat him for PTSD. But isn't this really one of those unassailable, almost unassailable strategy decisions that the trial attorney knows that bad evidence is going to come in and there's good evidence that's going to come in? I've got to weigh that and determine whether I want to present it. We'll concede that matters of trial strategy are normally virtually unassailable. However, in this case where trial counsel was mistaken about what evidence he could put in and also where trial counsel was unreasonable to believe that he couldn't overcome the notion that Mr. Delaney was malingering, in this case, the court still has to look at the reasonableness of trial counsel's decisions. And in this case, any news you need. How is it unreasonable to now, in retrospect, put counsel back in a position where here's his reports, here's what the state's going to put in, and find that that's unreasonable? His decision to not pursue that defense was unreasonable. Well, because the experts that trial counsel had available to him had tested Mr. Delaney for malingering and found that he had PTSD and using objective skills that he did not appear to be, they concluded he did not appear to be malingering. And again, not only that, he had been treated for this condition going two years back before this incident. So this is not a case where someone commits an offense and your pardon the expression cooks up a defense after the offense is over. He had PTSD going back years, going back years. And it's your position that the state's experts had not undergone the same testing and investigation to determine whether or not, in their opinion, he was malingering. Is that your position? I don't believe they had used the same objective measures, although they did determine that. One of the states' experts, at least, did believe that Mr. Delaney was malingering. So in any case, there was ample evidence of Mr. Delaney having PTSD due to an incident that occurred when he was in the military. That evidence was readily available to trial counsel. It would have, Mr. Delaney believes, influenced the jury to find that he was acting under the influence of PTSD at the time of this offense, overreacting to an internal stimuli that other people may not have seen the same way, and would have led the jury to convict him of second-degree murder and acquit him of first-degree murder. And for those reasons, Mr. Delaney is arguing that counsel was ineffective for failing to present the evidence of PTSD. If you'll allow me, I will move on to Mr. Delaney's second claim, that counsel was ineffective for failing to investigate and present an involuntary intoxication defense based on the combined effects of prescribed psychotropic medications that Mr. Delaney was taking at the time of the offense, Zoloft, Trazodone, and Seroclop. I realize that we look at this de novo, but the trial court, one of the trial court's reasons for dismissing at the first stage on this second issue was that it wasn't pled factually in the petition in any way or in the supporting report that the defendant had unwarned or unexpected side effects per the Harry case. Do you agree that that was not in the post-conviction petition or the supporting documentation? Well, I believe that the supporting documentation shows that Mr. Delaney was never warned of the side effects of these medications. What supporting documentation are you referring to? By the time that the post-conviction petition was filed, I do believe that Mr. Delaney had attached treatment records from mental health providers at Oak Park River Forest, and that is on page SR 907, supplemental record page 907. And I also believe it's at pages 707 through 709 of the common law record. So by the time the post-conviction petition was filed, Mr. Delaney had that documentation that showed detailed progress of his treatment, but never showed that he was warned of the possible side effects of the psychotropic drugs. Was that when the drugs were increased, the Seroclop was increased? Yes, during that period the drugs were increased. That seems to be in mid-June, possibly even just a few days before this incident occurred. Not only were the drugs increased, Mr. Delaney had been off the drugs for some period of time and started taking them again in June of 2009. So he had been off the drugs, started taking them again due to the instructions of his health care provider, mental health care provider, and then also they were increased, it seems, around the 16th of June, I believe is when they were increased. These documents that you're referring to, they simply don't mention that he was warned of the side effects, correct? I mean, there's nothing affirmative in this record that shows that he was not warned. I mean, there's no affidavit from your client saying I wasn't warned or from the doctor or anything of that nature, correct? Well, the doctor didn't provide any such affidavit, that's correct, because he was reviewing this case after the fact. I believe the records do establish that he was not warned. I mean, there are detailed notes in there about Mr. Delaney's treatment and his medication. But the point is it's by inference, then, that it's not. He was not warned because they put everything but the kitchen sink in there, nothing about a warning, therefore you draw the inference. Is that your argument? That's correct. Why not an affidavit from your client saying, hey, I didn't know? Your Honor, we don't have an affidavit from Mr. Delaney. Should we infer from that that he did know? No, I don't believe you should because the records establish that he was not warned. In addition to that, this is a first stage post-conviction petition. It's almost axiomatic on the first stage that the petition and the exhibits don't need to set out the claim in its entirety, right? The petition needs to state the gist of the claim. The petition needs to state an arguable basis for the claim. And certainly we have done that by showing that Mr. Delaney was taking these medications, that his medications were restarted and increased shortly before this event, and that these medications are known to create a toxic effect for people who take them in combination. The expert in our case, Dr. James O'Donnell, who is a professor of pharmacology at Rush University Medical Center, gave the opinion that by his review of the records and whatever he reviews regarding the offense, Mr. Delaney was, in fact, under the influence of the effects of Zoloft, Cereco, and Transodone, the combined effects. He also notes that Mr. Delaney had been on and off the drugs at various times and had recently started taking them in compliance with the... May I continue? Sure. Had recently started taking them and they had been increased. And Dr. O'Donnell did opine that it was known to professionals in the area of pharmacology that these medications in combination had an involuntarily intoxicating effect. Now, the circuit court discounted that opinion by saying that Mr. Delaney had been drinking alcohol as well and his ingestion of alcohol was voluntary and voluntary intoxication by use of alcohol is not a defense in Illinois. However, I would point this court, and I know my time is over, but I would point this court to the Supreme Court's decision in People v. Hari, which is 218 L. 2nd. 275. That case is from 2006. In that case, the defendant in that case was also taking Zoloft combined with Tylenol P.M. And in that case, his ingestion of those drugs was found to have the potential to have an involuntarily intoxicating effect. And the Supreme Court found that even though the defendant in that case was alcohol dependent, so also was ingesting alcohol voluntarily at the time of his offense. And so Mr. Delaney's voluntary ingestion of alcohol does not prevent him from raising an involuntary intoxication defense, especially at this first stage of post-conviction. You'll have a chance to reply. Thank you. Good morning, Your Honors. May it please the Court, Counsel Lisa Hoffman, Assistant State's Attorney, on behalf of the people of the State of Illinois. I just have a couple of things I want to touch on, and then any questions that the Court might have. And I will otherwise rest on our briefs. With respect to the question about whether or not counsel understood what the strategy was and how this worked with respect to the reports that were known to trial counsel and discussed at the Krankel hearing, counsel today suggested that the fact that the experts that Mr. Delaney had secured might testify or might have opined that he was not malingering and might have countered the State's expert, who apparently believed that he was malingering. And she suggested that's the reason why these reports should have been put in and this evidence should have been put in. But, in fact, that's precisely why trial counsel indicated at the Krankel hearing he didn't put it in. That was precisely the point. We've got defense experts who may or may not say, Actually, Dr. Bristow's report is somewhat, I would say, a little bit unintelligible with respect to his bottom line, because he has a lot of double negatives and maybe triple negatives in his ultimate conclusion about whether or not you could draw the conclusion that PTSD was playing a part in this. But even if you suggested that Dr. Bristow and Dr. Hillman would have said, Oh, he is not malingering, that was the fight that Mr. Jacobs said he did not want to get into at a trial. He didn't want it to be a trial about was the defendant under the, you know, was PTSD the cause of this or not, and did, in fact, defendant have PTSD or not? Because that was, if you lose that, if PTSD is your defense and you lose that battle and the, you know, jury says, Oh, I think you're, I think the malingering is, in fact, what the case is, now you're gone. So that, and Mr. Jacobs did a very nice job of explaining that at the Krankel hearing, which is. In People v. Pay, the Supreme Court said that we were not supposed to look at the strategy of first-stage dismissals. But I think as we stated in the brief, this is a really unique situation because that Krankel inquiry gave us a very good record. You normally don't have the kind of record that you would have here on what kind of, what led to, what strategy was led to, and, you know. So you might have to then get to the point where somebody was able to better frame a petition for a pro se defendant, which is, in the end, what first-stage proceedings really are about, about protecting the pro se litigant from, you know, not understanding. But it's the same standard. I do understand that. I'm just saying that that is what, that, you know, that's the idea. So in most situations, you might have undeveloped claims of strategy or, you know, like undeveloped attacks on strategy. In this case, we have a very developed record on strategy. We know what everybody thought, which is why we made the argument, our first argument, which is that this issue has been decided. This is barred because we have already litigated this, and this Court has already decided that there was no ineffectiveness sufficient for that. Does it matter that the trial court didn't have these reports? No, I believe it does not. And to the extent, because the reports were definitely referred to at the crankle hearing. I mean, I think that when counsel says, oh, well, PTSD was mentioned at the crankle hearing, that's a bit disingenuous. That is what the crankle hearing was about. And I keep using the term hearing, and that's not accurate. It was an angry group. But that was the entirety of that proceeding was about the ineffectiveness vis-a-vis PTSD. So in any event, I think at this point we are not in a Tate situation. We're in a situation where we have a very developed record. So you would be asking us to create an exception to the general rule of Tate and say when you have a crankle inquiry, you can consider that from the perspective of the trial court reviewing the entire record, its recollection of the proceedings. So that's what you're asking, is that this is now an exception to that? Right. This situation is carved out. And I don't know that, yes, the answer to your question is yes. I mean, yes to the extent that this is a unique situation where we have a unique record before us. I think that that exception or that carve-out for this sort of situation makes perfect sense. Certainly with respect to efficiency. You know, you made a comment about the first stage generally. We talk about protecting pro se litigants and undeveloped arguments and things of that nature. I'm going to slide to the second argument. If my colleagues have questions on the PTSD, again, certainly I have no objection to that. But on the involuntary intoxication, I just have a very pointed question for you. If, in fact, the defendant had filed this exact petition with all the supporting documentation, the amended petition, with all the supporting documentation, pro se, still does it survive? It does not survive. Really? It's lacking the most important piece of information with respect to that claim, and that is the defendant's averment that he, in fact, was taking those drugs and that he was never warned of the fact that those drugs combined with alcohol, combined with one another. Well, first of all, the reports indicate he began taking the drugs again in mid-June. This event happened on June 19th. And then his seroquel was upped. It was June 17th. So, I mean, there is some evidence in the record that he was taking it because he began taking them again. I mean, that's the one little thing. I do understand what the record says. And I will say this. The record is replete. Those medical records are replete with examples. I can give you some of them. Those medical records are in the record in the area of, you know, the early 700s of the common law record. Examples where the reports from his Oak Park treatment indicate that he was taking, then not taking. He'd come to an appointment. He'd report, no, he hadn't been taking them, but he was going to start taking them again. The therapist would say, you need to take your medications. That's what you need to do. But, I mean, honestly, as recently as June 3rd, the defendant was reported to be, in the medical records, taking meds sporadically. That's, quote, sporadically. And one of the occurrence witnesses said he was, quote, on something, end quote. He appeared to be on something. He was clearly also a high user of alcohol. So, you know, what his, you know, frustration level may or may not have been and whether he was using. But, again, nobody knows the answer to this except the defendant. But your position would be, then, in the absence of a clear averment by the defendant, all the other attachments to a post-conviction petition are irrelevant. Well, with respect to this kind of claim, if you're going to claim that I was under the, I was taking these medications and I was not warned about their side effects, which is what he needs to say for involuntary medication. Well, that's what the petition, in its totality, needs to say. There's no rule that says it must come from his mouth. Well, I don't know how else you, I mean, I think that in our brief we can just. But at a stage one, just. I think if the defendant cannot put an affidavit attached to his petition saying I didn't know about this and I was taking these drugs, if that simple, that is not a difficult threshold. And if we are to say that every time someone says, oh, well, I should have, you should have investigated involuntary intoxication because I was taking all of these antidepressants or other psychotropic meds or who knows what medication it might be under any circumstance, it will not mean everybody would just, if you could just put that issue in your petition and not attach an affidavit. But it's not just the allegation. It's the allegation and reams of treatment documents. Reams of treatment documents that don't suggest, A, that he was unwarned or, B, that he was taking these on the occasion of these events. Well, they don't suggest he was warned. True. Generally, a physician is not going to write down such and such a date. I did not warn patient of side effects. True. What you have is the absence of the warning. No physician is going to write that because then they'll be like, oh, I need to warn you about X, Y, Z. So to find that in a hospital record or a patient's record seems very unlikely. I don't. Again, I, if we were talking, if we were talking about a, I mean, if we're talking about a pro se petition or this petition. Right. I think that if you, if there was an affidavit from the defendant saying I was taking these prescribed medications and I never had been warned, then we would have the obligation to look into that further. But where the defendant's affidavit is conspicuously absent on something simple that he has awareness of, he knows if he was taking it and he knows if he was ever warned. And that is not a difficult threshold. Well, wait, I mean, it's not difficult for us who read Supreme Court case law. But again, when I go back, it takes us, we look at this petition as we would a pro se petition. Yes. Now, are we really going to hold a pro se, and I'm just saying for the sake of an argument, are we going to hold a pro se petitioner who includes all this documentation, including an expert report who opines that the use of these drugs, combined with alcohol, caused involuntary intoxication? That's an opinion in the expert report, caused involuntary intoxication. We are going to hold a defendant to the standard of putting forth every element of every defense as refined by Supreme Court case law. No, that's not what we're holding them to. But, yes, we are going to hold them to making, attaching an affidavit that says, I was taking these medications, I never got warnings. That, yes, I absolutely. Without that affidavit, are we left with, I guess, the inference that at times he was taking it, at times he wasn't? Yes, that's completely the inference from the record, because the record, as I said, there are from, you know, going back as far as, and I went, I have a number of examples, but going back as far as November of 2008, all the way through June of 2009, there are repeated references to the defendant said he was going to go back on his meds. He is not, I included to plan to obtain medicine. Oh, yes, he missed his meds because his girlfriend OD'd on them. That was in February of 2009. He's working on ways he can become compliant with meds. That was in March of 2009. Client only taking meds sporadically. I mean, it's this repeated, he's, I mean, honestly, the records, the inference from the records, I would say, suggests he doesn't take them more than he does, because that seems to be the therapist's major, you know, that is her most common thing to write down after a session is he is not taking his meds. I encouraged him to do so. So if we're going to take inference from the medical records, I would say what the inference is is that he doesn't take them very regularly. And, again, it is not a high bar to ask the defendant to say when it is his claim that he had a defense of involuntary intoxication, to say, I took these meds. But that's a different standard. It's not whether it's onerous or whether it's a high bar or a low bar. All he has to do is set forth a gist of an argument. And, again, if you set, if you are, if the gist of an argument can be set forth without him saying he took these drugs and he never got warnings, then anybody who says, I was involuntarily intoxicated, any of these things. But then if anybody says it, then you have the affidavit. No, it's a claim. It's not the defendant's claim. It's a claim. But that's our gist. The point we're trying to make is that he didn't just allege it in a petition, in the absence of an affidavit. He gives you these reports. Now, maybe they're not as clear as would be sufficient at a Stage 3 hearing, but the issue here is whether or not it's a gist. So any number of people are under the care of physicians and taking various medications, which may or may not have side effects in combination with other things, may or may not cause. I mean, certainly in our business, we see this oftentimes. And so, therefore, if we're to say that every time someone who was taking an antidepressant can provide a record that says they were prescribed antidepressants and now they want an involuntary intoxication event to be presented on their bank account and the failure of their lawyer to do so was an effectiveness,  I think saying, I'm being treated for depression and I take Zoloft, and I have an opinion from a physician that says Zoloft, when in combination with alcohol, can do all sorts of bad things. If that's what we're going to say is a gist, we're going to be seeing a lot of second-stage post-conviction petitions. I don't think that's what the gist standard is. Again, we are not talking about something that is, I mean, if you can get the records from your doctor, you can write an affidavit that says I was taking these on the date in question. So it's a factual issue is what you're saying? Right. I mean, is it a factual issue or is it a legal issue? Well, I think it's a legal threshold issue. I mean, in this case, has he provided enough in this petition to state the gist of a claim? So your argument is, and I understand it, is that this is an indisputably meritless legal theory based upon what you presented? Yes, because there's nothing to suggest he was actually taking these back on his date and that he was not warned about their side effects. Any other questions? Questions? We're going to ask a couple questions. Counsel raises a good point. Where is an affidavit? Judge, he didn't need an affidavit because he had the psychiatric care records, psychological care records, and those are even more reliable than what the state would surely call the defendant's self-serving affidavit if it were here. If it were here, they would say that that affidavit shows only the account of the defendant and it's totally self-serving. Here we have outside external records showing that he was, in fact, prescribed this medication and that he said that he was taking it. Well, it sounds like that's a factual issue, doesn't it, whether or not he was taking it. Certainly, but then it's not something that should be decided at the first stage of post-conviction review because at the first stage of post-conviction review, the allegations of the petition and the supporting documents are supposed to be taken as true, liberally construed in favor of the petition. Shouldn't there at least be an allegation that I was taking the medication, as opposed to records that say sporadic or trying to encourage him to take it? I believe the records establish that he said he was taking the medications in June. He was prescribed the medications and said he was taking them in June. Now, the fact that he might have been taking them more sporadically than we know, actually doesn't defeat his claim. If you look at the report of the expert, Dr. O'Donnell, it might make him more, Mr. Delaney, more susceptible to the side effects of that medication. If he's not taking them all the time, he's not used to them. He just started up taking them. The dosage was increased. So it might make him more susceptible, but I'll concede that that's a factual issue that really can't be decided at the first stage of post-conviction review. But if we're construing the petition liberally in favor of the defendant and assuming the allegations of the petition is equated documentation to be true at the first stage, then this claim has to survive first-stage dismissal. And then I'd like to – so I would just like to say a bit more that the state's argument that the only thing that can prove this claim is an affidavit from the defendant is simply not true. It's not true that everybody would do this if this court were to accept a petition without an affidavit from the defendant. Because at some point in the post-conviction process, if it moved forward, the defendant will have the burden of producing evidence in support of the claim, which might include his own testimony regarding his ingestion of the medication. But at this stage, the medical records are sufficient. So I'd like to urge the court to reject the state's argument that we have to have a defendant's affidavit on this issue. And then I'd like to go back to the first issue where the state is arguing that this court should make an exception to the Tate Doctrine of not considering whether something is a question of strategy at the first stage of post-conviction review. When the state was making the argument, it was repeatedly saying that we had a Krinkle hearing and that the Krinkle hearing established much more than we would normally know at the first stage of post-conviction review. And then she did correct herself that we, in fact, did not have a Krinkle hearing, but we had a Krinkle inquiry. I'd just like to point out that a Krinkle inquiry is very different from any sort of evidentiary hearing where people might actually testify, have a burden of proof, put on evidence. I mean, a Krinkle inquiry isn't even a Krinkle hearing. Right? This is a very unusual case. It is. I mean, where rarely do you have counsel for the defendant during a Krinkle inquiry, usually, as people say, claims against their attorney who's standing there. That's right. And, of course, we have the attorney in this case who's making comments to the court in response to the court's questions as an officer of the court. Now, he's not sworn. Right. But he's an officer of the court who's making comments about what he did in the case. And I think we can probably take that as akin to testimony. Can we not? No, I don't believe we can. I mean, on its face, I guess, at a Krinkle inquiry, the judge is free to accept what counsel is saying. May I answer your question? Sure. However, if this were an actual evidentiary hearing, a post-conviction hearing in particular, the state would have had to file a written answer. There would have been possible discovery. And counsel for Mr. Delaney would have had the opportunity to cross-examine trial counsel. That's not present at a Krinkle inquiry. And that's why the Krinkle inquiry doesn't give us enough information to know that, you know, to say that we should not apply Tate here at the first stage of post-conviction review. Does Tate apply here? Of course, Tate always applies at the first stage of post-conviction review. And so we would ask you to reject the state's argument to the contrary. Okay. Thank you. Well, thank you very much. Thank you both for excellent arguments this morning. We will be in recess until our next case at 1030.